JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant Marie Coward appeals from the trial court's order of summary judgment in favor of defendant-appellee Ameritech Corporation on appellant's claim of employer intentional tort.
 {¶ 2} Appellant argues summary judgment was inappropriate, contending the facts of this case demonstrated each of the necessary elements of her claim; however, this court disagrees. Consequently, the trial court's order is affirmed.
 {¶ 3} Appellee is a "wireline" subsidiary of SBC Communications that provides services to customers in several midwest states, including Ohio. Thus, through its employees, appellee maintains, repairs, and services telephone lines. Since many of these lines are aboveground, some of appellee's service technicians, the outside field technicians referred to as "comp techs," are required as part of their job duties to climb and to maneuver on telephone poles in order to work on the lines. Comp techs are expected to work in all weather conditions.
 {¶ 4} Appellant, a former Army veteran, applied for a position at appellee as a comp tech in late December, 2000. Upon her hire, she was assigned to attend appellee's "Pole Climbing, Ladders, and Safety Course" beginning on January 2, 2001. Her class was of moderate size, so it had two instructors, Richard Cibulskas and Willie Jackson.
 {¶ 5} The initial subject of the instruction, pole climbing, was presented as a five-day progression. The first day was one of classroom study that consisted of review of written manuals and both video and live demonstrations of proper climbing techniques. By the second day, the students actually practiced the skills they needed to acquire.
 {¶ 6} The training facility had both indoor and outdoor practice areas consisting of several telephone poles. Outdoors, the poles were placed in the ground apart from each other, and surrounded at their bases by a mulch of wood chips topped by rubber mats.
 {¶ 7} Climbing techniques were approached in a graduated manner; thus, all basic climbing skills were taught at a height of only six feet. Appellant learned appellee's "3 Point Contact Method" of climbing, i.e., she was required to keep either one hand and both feet or both hands and one foot on the pole at all times. Appellee provided her with "gaffs," or spikes, for each of her boots for climbing and a safety belt to aid her while performing maneuvers.
 {¶ 8} Since appellant seemed to need it, her lead instructor, Cibulskas, assigned Jackson to spend some special attention to appellant for her initial climbs. She appeared to be doing well at the six-foot height by the third day of the class, so she took the first two practical tests. Pursuant to appellee's policy, the tests were videotaped by an additional instructor. Appellant successfully climbed to six feet, and then successfully performed maneuvers at that height. By that time, most of appellant's fellow students had proceeded to their tests at the next height level of twelve feet.
 {¶ 9} The following day was the fourth day of the class. Appellant expressed some nervousness about being "behind" the other students, but she was aware that students were permitted three attempts to pass each given climb test, and she seemed "determined" to succeed. Moreover, all three of the instructors who had witnessed her tests at the six-foot level thought she had gained the basic climbing skills, and if somewhat slow, she was "persistent" and had done well. All, therefore, agreed with her decision to go on to take the twelve-foot tests.
 {¶ 10} Although ice crusted some of the practice pole, appellant passed the first portion of the test, having climbed to twelve feet "correctly." She then properly performed her maneuvers to the right. When it was time to step to the left, however, appellant failed to fully place the gaff for that foot. Consequently, as she shifted her weight to that leg, the gaff fell out of the wood. Appellant slipped and fell from the pole, breaking an ankle and jarring her back.
 {¶ 11} Appellant subsequently filed the instant action against appellee asserting her injuries resulted from her employer's intentional tort. After discovery had been conducted, appellee filed a motion for summary judgment on appellant's claim.
 {¶ 12} Appellee supported its motion with copies of deposition testimony and with the affidavit of James DeVita, its Associate Director of "I R" Training. DeVita explained he himself was a graduate of the training program, had worked as an outside field technician for eighteen years, was certified as an instructor for the Safe Pole Climbing course, and was certified to evaluate other instructors. He further completely outlined the course's requirements and safety procedures.
 {¶ 13} DeVita stated the telecommunications industry was covered by a federal regulation under the Occupational Safety and Health Administration ("OSHA") which required only the use of safety belts and straps for pole climbing, since more elaborate systems were unavailable in the field. He provided documents that demonstrated appellee had been inspected only days before appellant's class began and had been found to be in full compliance with OSHA safety regulations. DeVita opined that training which ensured employees could safely climb poles without the use of a "fall arrest system" was necessary for two reasons: 1) such a system provided the student with a false sense of security, because, 2) no such system was available in the field.
 {¶ 14} DeVita's affidavit was supported by the deposition transcripts of the instructors who had witnessed appellant's test performances and her fall. Cibulskas emphasized "safety of the individual" employee was stressed at appellee and was a priority during field training. Each instructor expressed surprise that the incident had occurred; in Cibulskas' words, he was "positive" appellant "was going to pass" the maneuver test.
 {¶ 15} Appellant responded to appellee's motion with a brief in opposition, but she supplied no additional evidentiary material. In response to some of appellant's arguments, appellee filed a reply brief to which it attached photographs of its outdoor pole-climbing training area.
 {¶ 16} The trial court ultimately granted appellee's motion for summary judgment with an opinion that examined the evidence and concluded appellant could demonstrate none of the necessary elements to prove her claim of employer intentional tort.
 {¶ 17} Appellant appeals from the trial court's order with one assignment of error, set forth verbatim, as follows:
 {¶ 18} "The trial court erred in granting summary judgment in favor of defendant appellee on plaintiff-appellant's claim for employer intentional injury."
 {¶ 19} Appellant argues summary judgment was inappropriate; she contends the evidence supported each of the necessary elements of her claim. Appellant's argument is unpersuasive.
 {¶ 20} Civ.R. 56(C) makes summary judgment proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Norris v. Ohio Std. OilCo. (1982), 70 Ohio St.2d 1. In reviewing the motion, the inferences to be drawn from the facts must be viewed in a light most favorable to the opposing party, since the moving party bears the responsibilities of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of evidence on an essential element of the opponent's claim. Dresher v. Burt, 75 Ohio St.3d 280,1996-Ohio-107.
 {¶ 21} However, a properly-supported motion forces the opponent to assume the reciprocal burden of specificity and he or she must then produce evidence on any issue for which that party bears the burden of production at trial. Id.; Wing v. AnchorMedia, Ltd. of Texas (1991), 59 Ohio St.3d 108. In an action by an employee against her employer, therefore, the employee must establish the existence of a genuine issue concerning whether her employer committed an intentional tort. Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 117.
 {¶ 22} An intentional tort is an action committed either with the intent to injure another, or with the belief that such injury is substantially likely to occur. Hannah v. Dayton Power LightCo., 82 Ohio St.3d 482, 1998-Ohio-406.
 {¶ 23} In order to establish intent or belief, the employee must demonstrate each of the following elements: 1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; 2) knowledge by the employer that if the employee is subjected by her employment to such, then harm to her will be a substantial certainty; and, 3) the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. Id. at 485; Fyffe v. Jeno's,Inc. (1991), 59 Ohio St.3d 115.
 {¶ 24} The employee's failure to establish one of the elements makes summary judgment on her claim appropriate. Gertzv. Nerone Sons, Inc., Cuyahoga App. No. 80422, 2002-Ohio-3782;McGlothin v. LTV Steel Co. (Oct. 12, 1995), Cuyahoga App. No. 68522. Moreover, mere knowledge and appreciation of a risk is not intent or belief; actual knowledge that harmful consequences are "substantially certain" is required. Fyffe v. Jeno's, Inc.,
supra; McGlothin v. LTV Steel Co., supra. Thus, the risk must be one that is beyond the "natural hazards" of that employment, i.e., one that is unreasonably dangerous. Brady v. Safety-Kleen
(1991), 61 Ohio St.3d 624; Logan v. Birmingham Steel Corp.,
Cuyahoga App. No. 80472, 2003-Ohio-5065.
 {¶ 25} The evidence supplied by appellee proved that comp techs commonly faced the risk of falling because their job necessarily entailed climbing telephone poles in all kinds of weather. This included winter conditions. Thus, appellee ensured potential comp techs were trained in the safest method of climbing for the industry, the "3 Point Contact Method." Any other method would have been unsafe, since it would have provided the comp tech with only a false sense of complete accomplishment.
 {¶ 26} The evidence also proved that before permitting either appellant or any other student to make any climbing attempts, appellee provided the students with the proper equipment and took care that they received written and demonstration instruction in this method. Appellee additionally ensured appellant actually practiced in its training facility, an area that possessed a somewhat cushioned surface and as many controlled conditions as possible. OSHA's inspection results for appellee's Ohio field training program further proved that in the year prior to the commencement of appellant's field training class, only one student had been injured in a fall.
 {¶ 27} Finally, the evidence proved that appellant began practice at a minimum height level, was given individualized instruction, was permitted to test at her own pace, and passed the initial-level tests before she made the attempt at the next level. Appellant encountered no risk beyond the natural hazards of the employment; as the supreme court often has pointed out, ice is a fact of wintertime life in Ohio. See, Lopatkovich v.Tiffin (1986), 28 Ohio St.3d 204, 206.
 {¶ 28} Concerning the incident itself, the instructors' testimony proved appellant performed the twelve-foot climb properly, and, once at that height, performed her right-side maneuver appropriately, but simply failed to set her left gaff completely prior to shifting her weight to that leg. Appellant's testimony corroborated the instructors' conclusion.
 {¶ 29} The evidence thus failed to establish appellee knew with substantial certainty that appellant would fall prior to completing her maneuvers at the twelve-foot height level.McGlothin v. LTV Steel Co., supra; Crow v. BeverageDistributors, Inc. (October 26, 1995), Cuyahoga App. No. 68622; cf., Brown v. Packaging Corp. of America (Jan. 11, 2001), Cuyahoga App. No. 77709.
 {¶ 30} Since appellant could not establish all of the elements necessary to prove her claim of employer intentional tort, the trial court properly granted appellee's motion for summary judgment. Gertz v. Nerone Sons, Inc., supra.
 {¶ 31} Accordingly, appellant's assignment of error is overruled.
 {¶ 32} The trial court's order is affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, P.J. and McMonagle, J. Concur.